CASE NO. 12-2522

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

**WILLIAM HAYES, on behalf of himself
and all others similarly situated,**

*Plaintiff/Appellee*

-v.-

**WAL-MART STORES, INC. d/b/a SAM'S CLUB**

*Defendant/Appellant*

---

On Appeal from the Order and Opinion of the
United States District Court for the District of New Jersey Granting
Class Certification in Civil Action No. 10-0460 (JBS/JS)

---

## BRIEF OF DEFENDANT/APPELLANT

---

Charles B. Casper
Paul H. Zoubek
John G. Papianou
MONTGOMERY, MCCRACKEN,
 WALKER & RHOADS, LLP
123 S. Broad St.
Philadelphia, PA 19109
Tel:   (215) 772-1500
Fax:   (215) 772-7620
Attorneys for Defendant/Appellant
Wal-Mart Stores, Inc. d/b/a Sam's Club

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF JURISDICTION ...................................................1

II.   STATEMENT OF THE ISSUES PRESENTED FOR REVIEW..................2

III.  STATEMENT OF THE CASE ....................................................3

IV.   STATEMENT OF THE FACTS ...................................................6

V.    SUMMARY OF THE ARGUMENT.............................................14

VI.   STANDARD OF REVIEW .....................................................16

VII.  ARGUMENT....................................................................17

      A.    The District Court Erred When It Applied the Wrong Standard in Finding that Plaintiff Met Rule 23's Ascertainability Requirement ...................................................................17

      B.    The District Court Failed to Conduct the Proper Rigorous Analysis When Determining Whether Plaintiff Satisfied Rules 23(a)(1) (Numerosity) and 23(b)(3) (Predominance) .......................25

VIII. CONCLUSION....................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Agostino v. Quest Diagnostics, Inc.,
  256 F.R.D. 437 (D.N.J. 2009)..........................................................................18

Behrend v. Comcast Corp.,
  655 F.3d 182 (3d Cir. 2011), cert. granted, ___ S. Ct. ___, 2012 WL
  113090 (June 25, 2012) ..................................................................................25

Chiang v. Veneman,
  385 F.3d 256 (3d Cir. 2004) ....................................................................passim

Clavell v. Midland Funding, LLC,
  No. 10-3593, 2011 WL 2462046 (E.D. Pa. June 21, 2011) ...................18, 21, 23

Coleman v. Watt,
  40 F.3d 255 (8th Cir. 1994) ...........................................................................18

Copp v. Am. Enterprise Servs. Co.,
  No. 4:11-189, 2012 WL 1555097 (S.D. Iowa Apr. 24, 2012)......................26, 27

Crosby v. Social Sec. Admin. of U.S.,
  796 F.2d 576 (1st Cir. 1986)......................................................................18, 19

Freid v. Nat'l Action Fin. Serv., Inc.,
  No. 10-2870, 2011 WL 1547257 (D.N.J. Apr. 20, 2011) .................................27

Grimes v. Rave Motion Pictures Birmingham, 264 F.R.D. (N.D. Ala. 2010).........21

In re Diet Drugs Prods. Liab. Litig.,
  431 F.3d 141 (3d Cir. 2005) ...........................................................................17

In re Hydrogen Peroxide Antitrust Litig.,
  552 F.3d 305 (3d Cir. 2008) ........................................................16, 17, 25, 30

In re IPO Secs. Litig.,
  471 F.3d 24 (2d Cir. 2006) .............................................................................18

In re OnStar Contract Litig.,
  278 F.R.D. 352 (E.D. Mich. 2011) ..............................................................26, 29

*Jameie S. v. Milwaukee Pub. Sch.*,
    668 F.3d 481 (7th Cir. 2012) ........................................................17, 19

*John v. Nat'l Sec. Fire & Cas. Co.*,
    501 F.3d 443 (5th Cir. 2007) ...............................................................17

*Mann v. TD Bank, N.A.*,
    No. 09-1062, 2010 WL 4226526 (D.N.J. Oct. 20, 2010) ...........................passim

*Mueller v. CBS, Inc.*,
    200 F.R.D. 227 (W.D. Pa. 2001) .......................................................18, 19

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) .................................................................30

*Romberio v. Unumprovident Corp.*,
    385 F. App'x 423 (6th Cir. 2009) ..........................................................18

*Rowe v. E.I. Dupont De NeMours and Co.*,
    262 F.R.D. 451 (D.N.J. 2009) ...............................................................23

*Stinson v. City of New York*,
    No. 10-4228, 2012 WL 1450553 (S.D.N.Y. Apr. 23, 2012) ...........................22

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...................................................................passim

*White v. Williams*,
    208 F.R.D. 123 (D.N.J. 2002) ...............................................................18

**STATUTES**

Class Action Fairness Act, 28 U.S.C. § 1332(d) ....................................................1

Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. §
    1681c(g) ...............................................................................21, 22

## I.   <u>STATEMENT OF JURISDICTION</u>

Plaintiff's class action complaint asserts claims against Wal-Mart Stores, Inc. d/b/a Sam's Club ("Sam's Club") for alleged violations of the New Jersey Consumer Fraud Act ("NJCFA"), for breach of contract, and for unjust enrichment.  The district court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

By order dated March 12, 2012, the district court adopted an amended class definition Plaintiff suggested at oral argument and granted Plaintiff's motion to certify the newly defined class.  On March 27, 2012, Sam's Club filed a petition under Fed. R. Civ. P. 23(f) for leave to appeal the district court's class certification order, which this Court granted on May 23, 2012.

## II.     STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Did the district court apply the wrong standard in finding Plaintiff's amended class definition met Rule 23's ascertainability requirement where no administratively feasible method exists to determine class membership?

2.     Did the district court fail to conduct the proper rigorous analysis in concluding that Rule 23(a)(1)'s numerosity requirement was satisfied by merely assuming that a certain percentage of the potential class members must meet the class definition's criteria?

3.     Did the district court fail to conduct the proper rigorous analysis when it found that individualized issues that would otherwise preclude class certification under Rule 23(b)(3)'s predominance requirement could be resolved by adding exceptions to the class definition that require extensive factual findings?

## III.    STATEMENT OF THE CASE

The district court certified a class despite Plaintiff's failure to demonstrate

the existence of one class member and despite his inability to offer an

administratively feasible method for determining whether any class members even

exist.  Had the district court conducted the proper rigorous analysis, it would have

concluded Plaintiff failed to satisfy the ascertainability, numerosity and

predominance requirements of Rule 23.

The underlying dispute arises out of Sam's Club's sale of extended

warranties ("Service Plans") for certain clearance items ("as-is" items) sold in its

New Jersey stores.  According to Plaintiff, Sam's Club should not have sold him

two Service Plans because the Plans' terms exclude as-is items from coverage and

therefore have no value.  The facts, however, are not that simple.

Many as-is items—those with full manufacturer's warranties or "last-one"

items (*i.e.*, brand-new items sold to clear out remaining inventory)—are eligible

for protection under the plain language of the Service Plans.  In addition, the

record evidence established that in the event Sam's Club mistakenly sold a Service

Plan for an ineligible as-is item, both it and the third-party company that

administers the Service Plans provided service or a refund to the customer.

These facts should have doomed Plaintiff's motion for class certification

because he offered no administratively feasible method for determining which

3

individuals—*if any*—purchased a Service Plan for an as-is item, or whether that
as-is item came with a full manufacturer's warranty. Nor did Plaintiff offer a
class-wide method for identifying individuals—*if any*—who purchased a Service
Plan for an ineligible as-is item and sought, but did not receive, service or a refund
for the item.

Despite these fatal flaws in Plaintiff's initial bid for certification, the district
court was persuaded by Plaintiff's suggestion at oral argument that it could certify
a class by simply excluding these categories of customers from the class definition
Plaintiff originally proposed. On March 12, 2012, the district court certified a
class consisting of:

> All consumers who, from January 26, 2004 to the
> present, purchased from Sam's Clubs in the State of New
> Jersey, a Sam's Club Service Plan to cover as-is
> products. Excluded from the Class are consumers whose
> as-is product was covered by a full manufacturer's
> warranty, was a last-one item, consumers who obtained
> service on their product, and consumers who have
> previously been reimbursed for the cost of the Service
> Plan.

In adopting this amended class definition, the district court made
fundamental errors that warrant reversal. *First*, the district court applied the wrong
legal standard in concluding that because it defined the class based on "objective"
criteria that, alone, satisfied Rule 23(a)'s ascertainability requirement. That is not
enough. An ascertainable class must rest on objective criteria that make it

4

administratively feasible for the court to determine whether a given individual is a member of the class. *See Chiang v. Veneman*, 385 F.3d 256, 270-71 (3d Cir. 2004). Here, there is no administratively feasible way for the district court to determine whether an individual is a class member or falls within one of the class definition's fact-specific exclusions. Extensive fact-finding is required.

*Second*, the district court failed to conduct the proper rigorous analysis in concluding Plaintiff satisfied Rule 23's numerosity requirement. In *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), the United States Supreme Court made clear that Plaintiff bears the burden of showing, by a preponderance of the evidence, that there are, in fact, sufficiently numerous members. Here, Plaintiff failed to demonstrate the existence of a ***single*** customer that falls within the class the district court certified.

*Third*, the district court failed to conduct the proper rigorous analysis when it found Plaintiff satisfied Rule 23(b)(3)'s predominance requirement. Neither Plaintiff nor Sam's Club has a record of which customers purchased as-is items, which as-is items are eligible under the Service Plans, or which customers purchased Service Plans for ineligible as-is items but received service under the Service Plan or a refund. Only fact-specific individual investigation and proof can answer these questions.

## IV.    STATEMENT OF THE FACTS

### A.    Sam's Club Sells Certain Clearance Merchandise "As-Is" But Does Not Track the Sale of Those Items.

Wal-Mart Stores, Inc. owns and operates Sam's Club, a chain of membership-only retail warehouse clubs that sells most of its merchandise to customers (hereafter, its "Members") in bulk, often directly off pallets, at discounted prices. *See* Appendix page ("App.") A-9 (Class Certification Memorandum Opinion) ("Opinion") (citation omitted).

Like many retailers, Sam's Club has a discounted clearance section or, as Sam's Club calls it, an "as-is" section. App. A-9 (Opinion) (citing App. A-53 at 22:15–24:1 (Deposition of Heidi Patulak) ("Patulak Dep.")); *see also* App. A-53 at 24:7–13 (Patulak Dep.). The as-is section consists of items whose price Sam's Club has marked down for a variety of reasons. The items may be: (1) a display item,[1] (2) a returned item,[2] (3) a "last-one" item,[3] or (4) an in-Club damaged item.[4]

---

[1] A "display" item is merchandise that Sam's Club has removed from its packaging for display to Members. App. A-68 ¶ 7 (Declaration of Heidi Patulak ("Patulak Decl.")); App. A-54 at 25:12–26:1 (Patulak Dep).

[2] A "returned" item is merchandise that a Member has returned to Sam's Club and that Sam's Club has re-offered for sale as-is. App. A-68 ¶ 8 (Patulak Decl.).

[3] A "last-one" item generally refers to brand-new items that Sam's Club sells as-is to clear out remaining inventory. App. A-68 ¶ 9 (Patulak Decl.).

App. A-53 at 22:13–23:8 (Patulak Dep.); App. A-67 ¶ 5 (Patulak Decl.).

Sam's Club marks the items in the as-is section with a bright orange sticker that states, in bold italicized type: "***This is a Clearance Item and is sold AS IS. It is non-returnable. Any missing manuals or parts are the responsibility of the Member. There are no additional discounts off price.***" App. A-70–71 (orange sticker exemplar); App. A-68 ¶ 11 (Patulak Decl.); *see also* App. A-9 (Opinion) (citing App. A-54 at 25:7–11; 26:9–11 (Patulak Dep.)).

Sam's Club has no record of which Members purchased as-is items. App. A-10 (Opinion) (citing App. A-61–62 at 56:8–57:12 (Patulak Dep.)). If a Member decides to purchase an as-is item, the Member takes it to the cashier along with any other items he or she wishes to purchase. When the Sam's Club cashier scans the as-is item, the original retail price initially appears. App. A-69 ¶ 18 (Patulak Decl.). To charge the Member the discounted price, a checkout supervisor performs a "price override"—a point-of-sale reduction from the normal retail price—by manually entering the discounted price. App. A-9–10 (Opinion) (citing App. A-54 at 26:2–11 (Patulak Dep.)). The point-of-sale software, which creates Sam's Club record of the transaction, captures the fact that an item was subject to a

---

....Continued

[4] An "in-Club damaged item" refers to an item that, while operable, suffers from in-Club damage. App. A-68 ¶ 10 (Patulak Decl.)

price override, but not the *reason* for the override. App. A-10 (Opinion) (citing A-61 at 53:18–23 (Patulak Dep.)); *see also* App. A-62 at 57:7–12 (Patulak Dep.).

Sam's Club personnel make price overrides for many reasons. Some are made to correct errors. For example, if the scanned price differs from the posted price, a checkout supervisor may perform a price override and enter the posted price. App. A-10 (Opinion) (citing App. A-54 at 26:15–22, A-63 at 63:6–64:19 (Patulak Dep.)). Sam's Club may make price overrides for competitive reasons as well. If a Member requests a discount because a competitor is offering the same item for less, a Club manager is authorized to discount the item to match the competitor's price. *Id.* (citing App. A-54 at 26:15–22, A-63 at 63:6–64:19) (Patulak Dep.)). A price override may also be performed if a Member purchases an item and later finds it on sale. *Id.* These are just a few examples. "A price override can be made by a member of management for a number of reasons aside from the item being sold as-is." *Id.* at 10 (citing App. A-63 at 63:25–64:4 (Patulak Dep.)).

During discovery, Sam's Club produced data showing approximately 3,500 transactions involving the sale of an item subject to a price override where a Service Plan was also purchased (the "3,500 Price Override Transactions"). App. A-24 (Opinion). But Sam's Club's records do not identify the reasons for the price overrides and thus do not permit the parties or the Court to locate "as-is" sales in

this universe of price-override transactions without questioning each proposed

class member.  App. A-10, A-24–25 (Opinion).

### B.    Sam's Club Offers Service Plans Through National Electronics Warranty Corporation that Cover Many As-Is Items.

In 2004, Sam's Club and National Electronics Warranty Corporation

("NEW") entered into a Marketing and Licensing Agreement for the sale of

Service Plans.  App. A-81 at 40:3–8, 40:16–21 (Deposition of Patrick Quinn

("Quinn Dep.")).  Service Plans are like extended warranties—they provide

protection to Members whose products malfunction during their term. *See, e.g.*,

App. A-90 at 75:20–76:15 (Quinn Dep.); App. A-92–100 (Ex. 27 to Quinn Dep.)

(Service Plan exemplar).

This case focuses on one of the Service Plan's exclusions.  Under the

Service Plan, NEW has no obligation to service "products sold 'as-is' including but

not limited to floor models (*unless covered by a full manufacturer's warranty on

your date of purchase*) and demonstration models."  A-10–11 (Opinion) (citation

omitted) (emphasis added); A-98 (Ex. 27 to Quinn Dep.) (Service Plan exemplar)

(emphasis added).  But the Service Plans cover many items in Sam's Club's

clearance section.  "For example, 'last one' items, particularly electronic items, are

often brand new, sealed items, that are marked as-is to clear out remaining

inventory.  That the item was sold as-is does nothing to void any manufacturer's

warranty."  App. A-69 ¶ 16 (Patulak Decl.).  Similarly, display items sometimes

come with the manufacturer's warranty and are thus eligible under the Service

Plan. App. A-68 ¶ 7 (Patulak Decl.); *see also* App. A-121 (Ex. 4 to the Deposition

of Dona Fellows ("Fellows Dep.")) (e-mail from Ed Carlton of NEW to Dona

Fellows advising that NEW "will cover a floor model *as long as it comes with a*

*mfg warranty*") (emphasis added).[5]  Indeed, as a result of this record evidence, the

district court excluded Members who purchased as-is items covered by a full

manufacturer's warranty from the class.  App. A-22 (Opinion).

> ### C.  Only Two Members in the United States Contacted Sam's Club About Purchasing Service Plans for an Ineligible As-Is Item and the Only Record Evidence Shows Sam's Club and NEW Will Honor Them.

Although Sam's Club's cashiers should refrain from selling Service Plans

for as-is items that do not carry a full manufacturer's warranty, it is *possible* a

---

[5] Although Service Plans protect as-is items covered by a full manufacturer's warranty, Plaintiff—in his Opposition to Wal-Mart, Inc.'s d/b/a Sam's Club Petition for Permission to Appeal ("Opp.")—repeatedly asserted that as-is items "do not come with a warranty from the manufacturer and, thus, do not fall within the 'full manufacturer's warranty' exception stated in the Service Plan." The district court never made this finding. On the contrary, the district court excluded from the class as-is items covered by a full manufacturer's warranty. App. A-22 (Opinion). To support his incorrect assertion, Plaintiff relies solely on an e-mail from Ed Carlton, an employee of National Electronics Warranty Corporation who manages the Sam's Club account. *See* App. A-116 at 62:24-63:1 (Fellows Dep.). But Mr. Carlton says only that a *particular type* of as-is item does not carry a manufacturer's warranty:  a damaged item, repaired by the retailer or an authorized dealer, and resold as-is. A-134 (Ex. 3 to Fellows Decl.).  Plaintiff ignores the *multiple reasons* items are sold as-is.

cashier may do so mistakenly. App. A-69 ¶ 20 (Patulak Decl.); *see also* App. A-81 at 37:23-25 (Quinn Dep.) (testifying that the "purchase of a service plan is as simple as a bar code being scanned"). But even if a cashier were to sell a Service Plan for an ineligible as-is item mistakenly, the record evidence establishes NEW and Sam's Club will stand behind the Service Plan if the as-is item malfunctions. In February 2010, Ed Carlton—NEW's account manager for the Sam's Club account—stated that "if a Service Plan was sold for an orange label item accidentally, *we will honor the Plan*; however, if a failure occurs and it cannot be repaired, the only option for the Member is the original purchase price (not a comparable product)." App. A-125 ¶ 11 (Declaration of Dona Fellows ("Fellows Decl.")); A-134 (Ex. 3 to Fellows Decl.) (emphasis added). In other words, the Member gets a repair or refund.

Sam's Club searched its national records and interviewed all of its New Jersey store managers to determine if Members had complained about purchasing as-is items and not getting service. It found records of only *two* incidents across the United States relating to Members who purchased Service Plans for as-is items, and one of the two incidents occurred in 2003—outside Plaintiff's proposed class period. App. A-125 ¶¶ 5–9 (Fellows Decl.); A-127–132 (Ex. 1, 2 to Fellows Decl.). In both cases, the Members were refunded the items' full purchase price.

*Id.*[6]  Moreover, none of the ten active Club Managers in New Jersey, with a combined managerial experience of nearly 100 years, could recall even *one* instance in which a Member complained about purchasing a Service Plan for an ineligible as-is item. *See* New Jersey Sam's Club Manager Declarations.  App. A-181–217.

In addition to Ed Carlton's statement that NEW "will honor the Plan" if "a Service Plan was sold for an orange label item accidentally" (App. A-125 ¶ 11 (Fellows Decl.); A-134 (Ex. 3 to Fellows Decl.)), Plaintiff's own experience establishes Sam's Club will take care of Members if they purchase Service Plans for ineligible as-is items.  His experience reveals that his Service Plans had value, and Sam's Club's record of giving refunds to the two customers who complained shows likewise.

On July 1, 2009, Plaintiff visited his local Sam's Club to purchase a television set.  App. A-11 (Opinion) (citing App. A-144 at 31:12–16 (Deposition of William Hayes ("Hayes Dep."))).  He found an as-is television set and purchased it

---

[6] The decision to reimburse a Member's purchase price if the product cannot be repaired is consistent with the Service Plan Terms and Conditions, which provide that "[f]or any single claim, the limit of liability under this Contract is the *least* of the cost of (1) the total authorized repairs performed, up to the purchase price of the Product … or … *the price that You paid for the Product*."  A-98 (Ex. 27 to Quinn Dep.) (Service Plan exemplar) (emphasis added); App. A-90 at 75:20-76:4 (Quinn Dep.).

along with a Service Plan, which cost $39.85.[7]  App. A-11–12 (Opinion) (citing

App. A-145 at 35:15–22, 36:10–21, A-147 at 42:7–44:21 (Hayes Dep.)); *see also*

App. A-167 at 124:9–23 (Hayes Dep.); A-170 (Ex. 4 to Hayes Dep) (receipt for

television set).

     After taking the as-is television home, Plaintiff discovered it did not come

with a user manual, remote control, or power cord.  App. A-12 (Opinion) (citing

App. A-146–147 at 40:24–41:19, A-149–150 at 52:15–53:20 (Hayes Dep.)).  This

is not unusual for products sold as-is at Sam's Club and elsewhere.  As-is items are

sometimes missing parts or accessories.[8]  Nevertheless, he called the Club,

requested the missing parts, returned to the Club and retrieved the manual and

remote control.  App. A-150 at 53:23–54:22 (Hayes Dep.); *see also* App. A-12

(Opinion) (citation omitted).  But back at home, he discovered the remote control

did not work.  App. A-12 (Opinion) (citing App. A-151 at 57:6–58:2) (Hayes

Dep.)).  He returned to the Club again and this time a manager opened a brand-new

television's box and gave him that remote control.  It worked.  *Id.* (Opinion) (citing

---

[7] A year earlier, Plaintiff purchased an as-is power washer and a Service Plan for
$5.26.  App. A-11 (Opinion).  Plaintiff never had a problem with his power washer
and thus never had to register or use his Service Plan.  App. A-166 at 117:10-17
(Hayes Dep.); App. A-148 at 47:1-5 (Hayes Dep.).

[8] The orange stickers on as-is items remind consumers that "***Any missing manuals
or parts are the responsibility of the Member***."  App. A-68 ¶ 11 (Patulak Decl.);
App. A-71 (Ex. 1 to Patulak Decl.).

App. A-155 at 74:4– 13 (Hayes Dep.)); *see also* App. A-173 ¶ 18 (Declaration of

Sheena M. Wyckoff ("Wyckoff Decl.")).

After at the Club, Plaintiff spoke with several employees, including Sheena

Wyckoff, a Membership Assistant Manager.  Plaintiff mentioned to her that he had

purchased a Service Plan for the as-is television.  App. A-154 at 70:1–5 (Hayes

Dep.).  Immediately, Ms. Wyckoff told him that Sam's Club should not have sold

him the Service Plan, and offered to refund its cost.  App. A-154 at 70:1–8 (Hayes

Dep.).  Hayes declined.  App. A-155. at 73:3–5 (Hayes Dep.).  Ms. Wyckoff then

invited him to return the television set for a refund.  App. A-173 ¶ 16 (Wyckoff

Decl.).  Once again, he declined.  *Id.*  Instead, Plaintiff—an attorney—filed this

putative class action against Sam's Club.

## V.     **SUMMARY OF THE ARGUMENT**

The district court committed three errors when it certified Plaintiff's

amended class definition.  Each warrants reversal.

*First*, the district court erred when it applied the wrong standard in

concluding that a class definition need only specify objective criteria to satisfy

Rule 23(a)'s ascertainability requirement.  As other Circuit Courts of Appeals and

numerous district courts have held, an ascertainable class must be defined not only

by objective criteria, it must also be administratively feasible for the court to

determine whether a given individual fits within the class definition.  This Court

agrees. *See Chiang v. Veneman*, 385 F.3d 256, 270-71 (3d Cir. 2004). Here, Plaintiff's amended class definition affords no administratively feasible way for the district court to determine whether a person is a class member. Instead, the district court will need to conduct thousands of fact-specific inquiries to determine whether a Member falls within the amended class definition or one of its exclusions.

*Second*, the district court abused its discretion when it failed to conduct the required rigorous analysis in finding that Plaintiff satisfied Rule 23(a)'s numerosity requirement. Plaintiff failed to show a *single* transaction that fits within the amended class definition. Rather, Plaintiff offered only a pool of *potential* class members that fit within the amended class definition—the 3,500 Price Override Transactions. The district court found numerosity by hypothesizing that five percent of those transactions might involve the sale of an as-is item that met the class definition's tests for inclusion and did not fall within one of its exclusions. But the district court had no factual basis for its hypothesis that five percent (or any other percentage) of the 3,500 Price Override Transactions may qualify. In *Dukes*, the United States Supreme Court made clear—and district courts after *Dukes* have confirmed—that plaintiffs must do more than offer a universe of *potential* class members. Plaintiffs must affirmatively demonstrate that there are, *in fact,*

15

sufficiently numerous class members. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

*Third*, the district court abused its discretion when it failed to conduct the required rigorous analysis in finding that Plaintiff satisfied Rule 23(b)(3)'s predominance requirement. The district court recognized that individual issues would predominate if it certified the class Plaintiff originally proposed—New Jersey Members who purchased Service Plans to cover as-is products—and attempted to weed out those issues by adopting Plaintiff's amended class definition. But Plaintiff's amended class definition will also require the district court to engage in thousands of contested fact-driven inquiries to determine not only whether each of the 3,500 Price Override Transactions involved the sale of an ineligible as-is item, but also whether the Member received service or a refund.

## VI.    STANDARD OF REVIEW

A district court's class certification order is reviewed for abuse of discretion, which occurs when its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 312 (3d Cir. 2008) (internal quotation marks omitted). A district court's errors in "formulating or applying legal precepts" are reviewed *de novo*. 3d Cir. L.A.R. 28.1(b); *see also Hydrogen Peroxide*, 552 F.3d at 312 ("Whether an incorrect legal standard has been used is

16

an issue of law to be reviewed *de novo*.") (internal quotation marks omitted); *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141, 145 (3d Cir. 2005) ("The District Court's legal conclusions are subject to plenary review.").

"Class certification is only proper 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *Hydrogen Peroxide*, 552 F.3d at 309 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). The burden of establishing predominance—and all other requirements under Rule 23—rests with Plaintiff. *See id.* at 320-21.

## VII. ARGUMENT

### A. The District Court Erred When It Applied the Wrong Standard in Finding that Plaintiff Met Rule 23's Ascertainability Requirement.

The district court erred in certifying Plaintiff's amended class definition because it erroneously believed that defining a class by objective criteria alone meets Rule 23's ascertainability requirement. App. A-19–23 (Opinion).

The Courts of Appeals that have reached the issue unanimously agree that ascertainability is a prerequisite to class certification. *See, e.g., Jameie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) ("a class must be sufficiently definite that its members are ascertainable"); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an

17

implied prerequisite of Federal Rule of Civil Procedure 23."); *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 430-31 (6th Cir. 2009) (recognizing a class must be ascertainable under Rule 23); *In re IPO Secs. Litig.*, 471 F.3d 24, 30, 44-45 (2d Cir. 2006) (same); *Crosby v. Social Sec. Admin. of U.S.*, 796 F.2d 576, 580 (1st Cir. 1986) (same); *Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir. 1994) (affirming denial of certification when plaintiff "failed to meet his burden in establishing the existence of a group of identifiable plaintiffs appropriate for class certification").

While not using the word ascertainable, this Court in *Chiang* amended a class definition to correct a district court's error in "introducing a subjective criterion into what should be an objective evaluation." 385 F.3d at 271. *Chiang* rests on this Court's understanding that a class must be ascertainable to be certified.

District courts within this Circuit—including the district court below—have likewise recognized ascertainability as a prerequisite to class certification. *See, e.g.*, *Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437, 478-79 (D.N.J. 2009); *White v. Williams*, 208 F.R.D. 123, 129-30 (D.N.J. 2002); *Mueller v. CBS, Inc.*, 200 F.R.D. 227, 233-34 (W.D. Pa. 2001); *Mann v. TD Bank, N.A.*, No. 09-1062, 2010 WL 4226526, at *11-14 (D.N.J. Oct. 20, 2010); *Clavell v. Midland Funding, LLC*, No. 10-3593, 2011 WL 2462046, at *2-5 (E.D. Pa. June 21, 2011).

The issue before this Court is whether a class is ascertainable just because it rests on objective criteria or whether, as other Circuit Courts and district courts have repeatedly held, it must also be administratively feasible for the district court to determine who the class members are.  As to this question, the Seventh Circuit recently reversed an order certifying a class where plaintiff offered "no way to know or readily ascertain who is a member of the class." *Jameie S*, 668 F.3d at 495.  In *Crosby*, the First Circuit affirmed the denial of a motion for class certification where proposed class members could not be identified without administratively infeasible individualized fact-finding.  796 F.2d at 580.  And in *Chiang*, this Court agreed "that class definitions must be free of merits allegations that require extensive factual findings," and approvingly cited a district court decision "explaining that membership in a class should rest on objective criteria that are administratively feasible for the court to rely on to determine whether a particular individual is a member of the class."  385 F.3d 270-71.

Similarly, district courts in this Circuit have held that to be ascertainable, a class must be defined to make it "'***administratively feasible*** to determine whether a given individual is a member of the class.'" *Mann*, 2010 WL 4226526, at *11 (emphasis added) (quoting *Mueller v. CBS, Inc.*, 200 F.R.D. 207, 233 (W.D. Pa. 2001)).  In *Mann*, the closest case to this one, the district court denied certification on ascertainability grounds where individual inquiries would be necessary to

19

determine who fit within the proposed class definition. The plaintiffs there alleged violations of the NJCFA, breach of contract, and unjust enrichment, and sought certification of a class of consumers who purchased or received Visa gift cards "on which dormancy fees were assessed." 2010 WL 4226526, at *1, 12. Defendants' records contained more information than Sam's Club's—they identified people who purchased cards that were assessed a dormancy fee. But because the gift cards could be freely transferred without documentation, the issuing banks did not know who owned the cards when the dormancy fee was assessed. *Id.* at *12. The court knew of "no systematic means for determining who ultimately received those cards or when purchasers gave their cards away" and, as a result, found the class "too indeterminate because it would require individual hearings to establish who qualifies as a class member." *Id.*

The *Mann* class failed the ascertainability test for an additional reason this Court mentioned in *Chiang*—the class definition contained merits allegations that required extensive factual findings. *See Chiang*, 385 F.3d at 271. As the *Mann* court put it, the definition was "over inclusive because it ignores legal complications associated with class membership." *Mann*, 2010 WL 4226526, at *12. To establish an NJCFA claim, a breach of contract claim, and an unjust enrichment claim, "each putative plaintiff [must] suffer an injury." *Id.* The proposed class included "cardholders with no legal right to recovery" because it

20

included all purchasers and recipients of gift cards, whether or not the person held

the card when the dormancy fee was assessed. *Id.* As here, the plaintiffs sought to

avoid these barriers to class certification by amending their class definition. They

proposed to include only persons who held gift cards at the time a dormancy fee

was assessed. But the court rejected this cure because it would still be required "to

conduct the same case-by-case factual inquiry" to determine who held the card

when the dormancy fee was assessed. *Id.* at *13. *See also Clavell*, 2011 WL

2462046, at *4-5 (class not ascertainable when defendant's records alone could not

identify the class and independent inquiry was required).

District courts outside this Circuit have likewise held that to be

ascertainable, a class must be defined to make it administratively feasible for the

court to determine whether a particular individual is a class member. In *Grimes v.*

*Rave Motion Pictures Birmingham, LLC,* for example, a movie theater patron

brought a putative class action against the theater company after it gave her a

receipt showing more than the last five digits of her credit card number in violation

of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. §

1681c(g). 264 F.R.D. 659, 662 (N.D. Ala. 2010). Plaintiff moved to certify a

class of all persons to whom the theater company issued an electronically printed

receipt that displayed more than the credit card's last five digits. *Id.* at 664.

In deciding whether the proposed class met Rule 23's ascertainability requirement, the court considered how it would locate and identify class members. *Id.* Because the theater company lacked records sufficient to identify persons who received a receipt that violated FACTA, the court denied plaintiff's motion. *Id.* at 664-66. To determine class membership would "require self-identification" (from those who were issued an allegedly non-compliant receipt) followed by "a merits based examination of each receipt presented by the few persons who might surprise the court." *Id.* at 666; *see also Stinson v. City of New York*, No. 10-4228, 2012 WL 1450553, at *12 (S.D.N.Y. Apr. 23, 2012) ("[T]he ascertainability requirement means that 'the class description is sufficiently definite so that it is *administratively feasible for the court to determine whether a particular individual is a member*.'") (emphasis added) (quoting *Casale v. Kelly*, 257 F.R.D. 396, 406 (S.D.N.Y. 2009)); 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1760, at 581 (3d ed. 1998) (description of class must be "sufficiently definite so that it is *administratively feasible*" to determine whether a particular individual is a member) (emphasis added).

Here, the district court erred in finding Plaintiff met Rule 23's ascertainability requirement because it erroneously concluded a class is ascertainable if it: (1) "specifies 'a particular group that was harmed during a particular time frame, in a particular location, in a particular way;'" and (2)

facilitates the court's ability "to ascertain the class's membership in some objective manner." App. A-20 (Opinion) (quoting *Rowe v. E.I. Dupont De Nemours and Co.*, 262 F.R.D. 451, 455 (D.N.J. 2009)).  The district court failed to recognize that a class is not ascertainable where, as here, there is no administratively feasible way for the court to determine whether a particular person fits within the class definition.

As in *Mann*, Sam's Club has "no systematic way to determine who actually" is a class member.  2010 WL 4226526, at *1; *see also Clavell*, 2011 WL 2462046, at *4-5 (class not ascertainable when defendant's records alone could not identify the class and independent inquiry was required).  Under the amended class definition, "[e]xcluded from the Class are consumers whose as-is product was covered by a full manufacturer's warranty, was a last-one item, consumers who obtained service on their product, and consumers who have previously been reimbursed for the cost of the Service Plan." App. A-22 (Opinion).  But neither the district court nor Plaintiff articulated an administratively feasible way to determine whether a particular customer fits within the amended class definition. That's because there is none.

First, the district court would have to determine whether a proposed class member purchased an as-is item.  While Sam's Club identified 3,500 Price Override Transactions in which a Service Plan was also purchased, that list is even

23

worse than the banks' inadequate lists of customers who bought Visa gift cards in

*Mann* because it fails to show which of those Members, if any, bought as-is

items—merely the first step in identifying a class member. To avoid thousands of

individual mini-trials, the putative class members would have to self-identify as

individuals who purchased Service Plans for as-is items, a procedure found

inadequate in *Grimes*.

Second, even if some fraction of the 3,500 self-identified as purchasers of

as-is items, individual mini-trials would still be necessary to determine whether the

Member purchased an as-is item that came with a full manufacturer's warranty or

was a last-one item (and thus fell within one of the class definition's exclusions).

And even then, more individual inquiries would be necessary to determine whether

the proposed class member sought and received service or a refund for the as-is

item. Only after concluding this series of inquiries for the 3,500 Price Override

Transactions could the district court ascertain whether a particular Member—if

any—fits within the amended class definition. Certifying a class that requires such

a process contravenes the rule this Court recognized in *Chiang* "that class

definitions must be free of merits allegations that require extensive factual

findings." 385 F.3d at 271. Without an "administratively feasible [method] for the

court to rely on to determine whether a particular individual is a member of the

24

class," the class is unascertainable. *Id.* (citing *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911, 2003 WL 21659373, at *2-3 (S.D.N.Y. July 15, 2003)).

**B.      The District Court Failed to Conduct the Proper Rigorous Analysis When Determining Whether Plaintiff Satisfied Rules 23(a)(1) (Numerosity) and 23(b)(3) (Predominance).**

The Court should reverse the district court's decision because it failed to perform the necessary rigorous analysis in determining whether Plaintiff satisfied Rule 23's numerosity and predominance requirements.

This Court has made clear—and the Supreme Court has confirmed—that class certification is appropriate only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *Hydrogen Peroxide*, 552 F.3d at 309 (internal quotation marks omitted); *Dukes*, 131 S. Ct. at 1251-52 & n. 6. "Rigorous analysis" requires the district court to thoroughly examine the facts necessary to establish the requirements of Rule 23. "Plaintiffs bear the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Behrend v. Comcast Corp.*, 655 F.3d 182, 190 (3d Cir. 2011), *cert. granted*, ___ S. Ct. ___, 2012 WL 113090 (June 25, 2012) (citing *Hydrogen Peroxide*, 552 F.3d at 320)).

**1.      The District Court Inferred Numerosity Without A Sufficient Factual Basis.**

The district court abused its discretion when it concluded that Plaintiff satisfied Rule 23(a)'s numerosity requirement.

Rule 23(a) requires a class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. Proc. 23(a)(1). It is the plaintiff's burden to "affirmatively demonstrate" that "there are *in fact* sufficiently numerous parties." *Dukes*, 131 S. Ct. at 2551 (emphasis in original). District courts are following *Dukes* and denying class certification where a plaintiff fails to demonstrate the existence of enough other class members. *See, e.g., Copp v. Am. Enterprise Servs. Co.*, No. 4:11-189, 2012 WL 1555097 (S.D. Iowa Apr. 24, 2012); *In re OnStar Contract Litig.*, 278 F.R.D. 352 (E.D. Mich. 2011).

In *Copp*, for example, the court refused to infer numerosity just because plaintiffs alleged their employer diverted commissions from a potential pool of 9,000 insurance agents. 2012 WL 1555097, at *1. The proposed class definition included agents who were subject to defendants' alleged practices but suffered no harm. *Id.* at *2 (citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006)). The 9,000 agents, like the 3,500 Sam's Club Members with Price Override Transactions, were nothing more than a pool in which class members might be found: "any appropriate class definition in this case must be restricted to agents who actually suffered losses or damages as a result of Defendants' practices." *Id.*

As to that number, the court found that plaintiffs failed to explain "how the large number of agents who worked for Defendants over the past decade demonstrates that the number of agents who were actually injured must also be

sufficiently numerous." *Id.* Relying on *Dukes*, the court concluded that "[b]ecause it is Plaintiffs' burden to demonstrate that the size of the class is *in fact* sufficiently numerous and Plaintiffs have failed to provide the Court with sufficient evidence to do so, the Court must find that Plaintiffs have failed to meet their burden of proof on the issue of numerosity." *Id.* at *3 (emphasis in original); *see also Freid v. Nat'l Action Fin. Serv., Inc.*, No. 10-2870, 2011 WL 1547257, at *7 (D.N.J. Apr. 20, 2011) (refusing to infer that just because a debt collector made millions of phone calls to consumers it must have "left *unauthorized* voicemail messages in some significant number of cases") (emphasis added).

Here, Plaintiff likewise failed to meet his burden of demonstrating that there are, in fact, sufficiently numerous class members. Indeed, Plaintiff failed to establish the existence of even *one* proposed class member who fits within his amended class definition—including himself.[9] Like the plaintiff in *Copp*, Plaintiff here merely offered evidence of a pool of *potential* class members with no factual basis from which to infer the number of persons who fit within the amended class definition. No one knows how many Members purchased as-is items and a Service Plan, and no one knows how many of those would be excluded from the class

---

[9] Plaintiff testified he does not know if his power washer came with a manufacturer's warranty. App. A-155 at 76:13-23 (Hayes Dep.).

because (1) they purchased an as-is product covered by a full manufacturer's warranty, (2) they purchased a last-one item, (3) they obtained service on their product, or (4) they got a refund.

Every step of the district court's numerosity analysis rests on speculation, without identifying any class-wide method for winnowing a pool of 3,500 potential transactions to an unknown number that fit within the amended class definition. The district court simply speculated that because Sam's Club's identified 3,500 Price Override Transactions, there must be a sufficiently numerous group of individuals who purchased as-is items. *See* App. A-24–25 (Opinion).   But the district court had no factual basis to speculate that one, one hundred, or any other number of the 3,500 Price Override Transactions involved the sale of as-is items.

And that is only the first step.  Even if, for example, 175 Members purchased Service Plans for as-is items, the question still remains whether any of those Members fits within the *amended* class definition.  In other words, the district court had no factual basis to infer that the as-is items they purchased did not come with a full manufacturer's warranty and were not last-one items.  Nor did the district court have a factual basis to infer what percentage of those hypothetical 175 Members sought and received service or a refund.  The number of persons who meet the amended class definition could be determined only through individual contested mini-trials to establish the facts.

The need for individual mini-trials defeats numerosity. In *In re OnStar Contract Litig.*, vehicle owners alleged several automobile manufacturers violated various consumer protection statutes when they failed to disclose that OnStar telematics equipment in automobiles they sold would soon become obsolete. 278 F.R.D. at 361-63. Following *Dukes*, the court found plaintiffs failed to meet their burden of demonstrating there were, in fact, sufficiently numerous parties. Plaintiffs "offered only speculation as to the actual number of class members." *Id.* at 373. The court explained "that the reason why Plaintiffs have not identified the number of proposed class members is because, for a number of reasons, the proposed classes are not ascertainable without individualized inquiries." *Id.* As here, the need for individualized inquiries to establish a sufficiently numerous class defeats class certification.

Finally, the district court's failure to conduct the proper rigorous analysis is not remedied by its suggestion that Sam's Club move for class decertification "[i]f, after the Plaintiff has had an opportunity to notify class members … it becomes apparent that there are insufficient members to satisfy the numerosity requirement." App. A-25 (Opinion). Quite the contrary, the court's suggestion undermines its analysis. Under *Dukes* and *Hydrogen Peroxide*, it is Plaintiff's burden to demonstrate—in his motion for class certification—that he has satisfied the requirements of Rule 23 based on a preponderance of the evidence. In

*Hydrogen Peroxide*, 552 F.2d at 319, this Court explained that the 2003 amendments to Rule 23 confirm that a class certification ruling may not be conditional or tentative—it must be based on the evidence as it stands at class certification.

The district court failed to conduct the proper rigorous analysis in concluding Plaintiff satisfied Rule 23(a)(1)'s numerosity requirement. Plaintiff failed to meet his burden to "affirmatively demonstrate" that "there are *in fact* sufficiently numerous parties." *Dukes*, 131 S. Ct. at 2551 (emphasis in original).

> **2.    The District Court Failed to Conduct the Proper Rigorous Analysis When Finding Plaintiff Satisfied Rule 23(b)(3) Predominance Requirement.**

Certification under Rule 23(b)(3) "is permissible only when 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001) (quoting Fed. R. Civ. P. 23(b)(3)). "'If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.'" *Hydrogen Peroxide*, 552 F.3d. at 311 (quoting *Newton*, 259 F.3d at 172).

Here, the district court's predominance analysis fell far short of the rigorous analysis this Court mandated in *Hydrogen Peroxide*. According to the district court, "Plaintiff and absent class members paid money for a product with no value

30

and received no consideration from the Defendant.  Therefore, common proofs can be used to establish that these customers paid for a Service Plan and received nothing in return." App. A-30–31 (Opinion).  But the court overlooked key facts that make it impossible to determine—on a class-wide basis—whether a proposed class member purchased a Service Plan that had no value and thus suffered an ascertainable loss.

First, the district court ignored the parties' lack of information about the 3,500 Price Override Transactions in which a Service Plan was also purchased. Individual inquiries will be necessary to determine whether any of these transactions involved the sale of as-is items.  App. A-61–62 at 53:18–23; 57:7–12 (Patulak Dep.) (testifying that there is no way to determine from Sam's Club's electronic records whether an item subject to a price override was sold as-is).

Second, once it is determined whether a Service Plan was purchased for an as-is item, the district court must then determine whether the as-is item came with a full manufacturer's warranty or was a last-one item.  This can be accomplished only through fact-specific inquiries.  App. A-68–69 ¶¶ 7, 15 (Patulak Decl.). Plaintiff's own facts illustrate the point.  Wal-Mart learned at his deposition that he does not know whether his as-is items came with full manufacturer's warranties. App. A-155 at 76:9-23.  If his as-is items came with a full manufacturer's warranty, he fails to meet the class definition and has no claims to assert.

31

Third, the district court overlooked the individual inquiries necessary to determine whether a Member who purchased a Service Plan for an ineligible as-is item nonetheless sought and received service (or received a refund).  App. A-125 ¶ 11(Fellows Decl.); A-134 (Ex. 3 to Fellows Decl.).

In short, the district court abused its discretion in finding Plaintiff satisfied Rule 23(b)(3)'s predominance requirement.  Under *Dukes*, Sam's Club has the right to inquire whether each proposed class member purchased an as-is item, whether his or her purchase came with a manufacturer's warranty or was a last-one item, and whether any of these Members sought and received service (or a refund). *See Dukes*, 131 S. Ct. at 2560 ("Contrary to the Ninth Circuit's view, Wal–Mart is entitled to individualized determinations of each employee's eligibility for backpay.").  Neither the district court nor Plaintiff articulated a class-wide method for answering these questions.  Plaintiff's lack of knowledge about whether his items came with full manufacturer's warranties even after preparing for his deposition shows the individualized fact-finding that will be required. Accordingly, the Court should vacate the district court's order and remand it with instruction that the class be decertified.

## VIII. <u>CONCLUSION</u>

For the foregoing reasons, Sam's Club respectfully requests that the Court vacate the district court's class certification order and remand to the district court with instruction that the class be decertified.

/s/ John G. Papianou
Charles B. Casper
Paul H. Zoubek
John G. Papianou
MONTGOMERY, MCCRACKEN,
   WALKER & RHOADS, LLP
123 S. Broad St.
Philadelphia, PA 19109
Tel:   (215) 772-1500
Fax:   (215) 772-7620
Attorneys for Defendant/Appellant
Wal-Mart Stores, Inc. d/b/a Sam's Club

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to Fed. R. App. P. 32(a)(7), this brief has been prepared using a proportionately spaced 14-point font typeface, and does not exceed 14,000 words.

Dated:  August 6, 2012          /s/  John G. Papianou_____
                                John G. Papianou

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

I certify that I am a member in good standing of the United States Court of Appeals for the Third Circuit.

Dated:  August 6, 2012    /s/ John G. Papianou
             John G. Papianou

## CERTIFICATION OF DOCUMENT AND VIRUS CHECK

I, John G. Papianou, hereby certify that the text of the electronic version of this brief is identical to the text of the paper copies that were filed with this Court and served upon the attorneys listed in the Certificate of Service. I also certify that a virus check was performed on the PDF file of Defendant/Appellant's Brief using McAfee VirusScan Enterprise + AntiSpyware Enterprise 8.5.0i and no virus was detected.

/s/ John G. Papianou
John G. Papianou

## CERTIFICATE OF SERVICE AND E-FILING COMPLIANCE

I, John G. Papianou, hereby certify that I served a true and correct copy of

the foregoing Brief of Defendant/Appellant Wal-Mart Stores, Inc. d/b/a Sam's

Club, by U.S. first-class mail, postage prepaid, upon the following:

> Daniel R. Lapinski
> WILENTZ GOLDMAN & SPITZER
> 90 Woodbridge Center Drive
> Suite 900
> Woodbridge, NJ 07095
>
> James C. Shah
> SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
> 475 White Horse Pike
> Collingswood, NJ 08107
> Attorneys for Plaintiff/Respondent William Hayes

I further certify that ten hard copies of the foregoing brief were delivered to

the Clerk's Office on the same day the E-Brief was electronically filed.

Date:  August 6, 2012              /s/  John G. Papianou
                                   John G. Papianou

CASE NO. 12-2522

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

WILLIAM HAYES,

*Plaintiff/Appellee*

-v.-

WAL-MART STORES, INC. d/b/a SAM'S CLUB,

*Defendant/Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

VOLUME I OF APPENDIX (JOINT APPENDIX)

Charles B. Casper
Paul H. Zoubek
John G. Papianou
MONTGOMERY, McCRACKEN,
  WALKER & RHOADS, LLP
123 S. Broad Street
Avenue of the Arts
Philadelphia, PA 19109
Tel:  (215) 772-1500
Fax:  (215) 772-7620

*Attorneys for Appellant,
Wal-Mart Stores, Inc. d/b/a Sam's
Club*

**TABLE OF CONTENTS**
**VOLUME I OF APPENDIX (JOINT APPENDIX)**

| USDC Dkt. No. 1:10-00460 | Document | Page |
|---|---|---|
| 54 | Notice of Grant of Permission for Leave to Appeal | A-1 |
| 48 | Class Certification Order | A-5 |
| 47 | Class Certification Opinion | A-8 |

OFFICE OF THE CLERK



**MARCIA M. WALDRON**
**CLERK**

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT
21400 UNITED STATES COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA 19106-1790
Website: www.ca3.uscourts.gov

TELEPHONE
215-597-2995



May 23, 2012

William T Walsh
United States District Court for the District of New Jersey
Room 1050
Mitchell H. Cohen United States Courthouse
1 John F. Gerry Plaza
Camden, NJ 08101-0000

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## NOTICE

## GRANT OF PERMISSION FOR LEAVE TO APPEAL

The Court of Appeals has granted a petition for leave to appeal in this matter.

The $455.00 docketing and filing fee must be paid in the district court within 14 days after the entry of the order granting permission for leave to appeal, unless the petitioner is the United States government. Fed. R. App. P. 5. In addition, a cost bond must be filed if one is required under Fed. R. App. P. 7.

A notice of appeal does not need to be filed as a copy of the Court's order granting permission for leave to appeal which has been forwarded to the district court will serve as the notice of appeal.

The entry date of the order granting permission to appeal serves as the date of the filing of the notice of appeal for calculating time under the Federal Rules of Appellate Procedure. **Petitioner should notify the Court of Appeals in writing that the filing fee has been paid.**

Upon receipt of the notice from petitioner, the appeal will be opened on the general docket. All future filings regarding the appeal will be entered under the new docket number.

Very truly yours,

*Marcia M. Waldron*

A-1

Marcia M. Waldron, Clerk

By: /s/ Tonya
Tonya, Case Manager
267-299-4938

cc:

Charles B. Casper, Esq.
Daniel Lapinski, Esq.
John G. Papianou, Esq.
James C. Shah, Esq.
Paul H. Zoubek, Esq.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

April 9, 2012
GCO-080

No. 12-8022

WILLIAM HAYES, on behalf of himself
and all others similarly situation

v.

WAL-MART STORES, INC.,
d/b/a SAM'S CLUB, ABC CORPORATIONS I-V
(fictitious names)

Wal-Mart Stores, Inc.,
d/b/a Sam's Club,
Petitioner

(D.N.J. No. 1-10-cv-00460)

Present: FUENTES, GREENAWAY JR., and NYGAARD, <u>Circuit Judges</u>

1. Petition on behalf of Petitioner Wal-Mart d/b/a Sam's Club for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f);

2. Response by Respondent William Hayes, on behalf of himself and all other similarly situated in Opposition to Petition for Permission to Appeal;

3. Motion by Petitioner for leave to file reply, together with reply.

Respectfully,
Clerk/TYW

_____ORDER_____

     The foregoing motion seeking permission to appeal pursuant to Fed. R. Civ. P. 23(f) is granted.  The motion for leave to file a reply is denied.

By the Court,

<u>**/s/Joseph A. Greenaway, Jr.**</u>
**Circuit Judge**

Dated:     May 23, 2012

A-3

tyw/cc:    Daniel Lapinski, Esq.
James C. Shah, Esq.
Charles B. Casper, Esq.
John G. Papianou, Esq.
Paul H. Zoubek, Esq.



A True Copy:

Marcia M. Waldron

Marcia M. Waldron, Clerk

A-4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM HAYES, on behalf of himself and all others similarly situated, | HON. JEROME B. SIMANDLE |
| | Civil No. 10-460 (JBS/JS) |
| Plaintiff, | |
| v. | **ORDER FOR CLASS CERTIFICATION** |
| WAL-MART d/b/a SAM'S CLUB, et al., | |
| Defendants. | |

This matter having come before the Court upon Plaintiff William Hayes' ("Plaintiff") motion for class certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) [Docket Item 27]; the Court having considered the submissions of the parties and held oral argument; for the reasons explained in the Opinion of today's date; and for good cause shown;

IT IS this ___12th___ day of **March, 2012** hereby

ORDERED that Plaintiff's motion for class certification shall be and hereby is **GRANTED**, and this Court hereby certifies a class consisting of:

"**All consumers who, from January 26, 2004 to the present, purchased from Sam's Clubs in the State of New Jersey, a Sam's Club Service Plan to cover as-is products. Excluded from the Class are consumers whose as-is product was covered by a full manufacturer's warranty, was a last-one item,**

**consumers who obtained service on their product, and
consumers who have previously been reimbursed for the cost
of the Service Plan.";**

The Court finds that the requirements of Rule 23 of the Federal
Rules of Civil Procedure are satisfied, and that a class action
is an appropriate method for resolving the disputes in this
litigation.  All the prerequisites for class certification under
Rule 23 are present. The Class Members are ascertainable and too
numerous to be joined. Questions of law and fact common to all
Class members predominate over individual issues and should be
determined in one proceeding with respect to all Class members.
The Class Representatives' claims are typical of those of the
Class.  The Class action mechanism is superior to alternative
means for adjudicating and resolving this action; and it is
further

    ORDERED that William Hayes is designated "Lead Plaintiff";
and it is further

    ORDERED that Kevin Hal Friedman, Esq., Victoria Hwang-
Murphy, Esq. and Daniel R. Lapinski, Esq., of the law firm of
Wilentz Goldman & Spitzer, PC, are hereby appointed as Class
Counsel as the court finds these attorneys are qualified,
experienced, and have aggressively litigated this case, thereby
demonstrating their adequacy as counsel for the instant action
pursuant to Fed. R. Civ. P. 23(g); and it is further

ORDERED that the class claims or issues, pursuant to Rule 23(c)(1)(B), are defined as:

First, whether Defendants, violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., by selling Service Plans on as-is products when the Defendants knew the Service Plans expressly excluded as-is products from coverage; and

Second, whether Defendants are liable for breach of contract because the Service Plan was sold to members in conjunction with the sale of as-is products despite the Service Plan expressly excluding as-is products from coverage; and

Third, whether the Defendants were unjustly enriched by the sale of Service Plans on as-is products when the Service Plan expressly excluded as-is products from coverage; and it is further

ORDERED that counsel shall confer regarding an appropriate form of notice to the class members under Rule 23(c)(2)(B)(i)-(vii), and Class Counsel shall file an appropriate motion for approval of the form of notice, within fourteen (14) days of the entry of this Order; and it is further

ORDERED that the Plaintiff's claims arising out the Second Service Plan (pertaining to the as-is television purchase) are dismissed as moot.

__s/ Jerome B. Simandle__
JEROME B. SIMANDLE
Chief U.S. District Judge

3

A-7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM HAYES, on behalf of himself and all others similarly situated, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 10-460 (JBS/JS) |
| v. | **OPINION** |
| WAL-MART d/b/a SAM'S CLUB | |
| Defendant. | |

APPEARANCES:

Daniel R. Lapinski, Esq. (argued)
Keven Hal Friedman, Esq.
Victoria Hwang-Murphy, Esq.
WILENTZ GOLDMAN & SPITZER
90 Woodbridge Center Drive
Suite 900
Woodbridge, NJ 07095
        and
James C. Shah, Esq.
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
475 White Horse Pike
Collingswood, NJ 08107
        Attorneys for Plaintiff William Hayes

Paul H. Zoubek, Esq.
John Papianou, Esq. (argued)
Gregory John Hauck, Esq.
Stacy Alison Fols, Esq.
Montgomery, McCracken, Walker & Rhoads, LLP
457 Haddonfield Road
Suite 600
Cherry Hill, NJ 08002
        Attorney for Defendant

**SIMANDLE**, Chief Judge:

# I.  INTRODUCTION

This matter is before the court on Plaintiff William Hayes'

("Plaintiff") motion for class certification [Docket Item 27].

The Defendant, Wal-Mart Stores Inc. d/b/a Sam's Club ("Defendant"

or "Sam's Club") filed opposition to this motion.  Following oral

argument, the motion was temporarily stayed at the request of the

parties, and the stay was recently lifted.

In this action, Plaintiff alleges that Sam's Club marketed,

represented and sold to its members Sam's Club Service agreements

for as-is products without disclosing to the purchaser that as-is

products were expressly excluded from coverage.  The Plaintiff

alleges violations of the New Jersey Consumer Fraud Act, N.J.S.A.

§ 56:8-2, as well as causes of action for breach of contract and

unjust enrichment.

For the reasons set forth below, the Plaintiff's motion for

class certification will be granted.

## II.  BACKGROUND

### A. Factual and Procedural History

Defendant Sam's Club is an American chain of membership-only

retail warehouse clubs which sell groceries and general

merchandise, which includes as-is products.  (Patulak Dep. at

22:15-24:1.)  As-is products are marked with an orange sticker

and the sale of these as-is products results in a price override.

(Patulak Dep. at 25:7-11; 26:9-11.)  A price override is

performed at the checkout register to ensure that the price

charged the customer equals the marked-down price on the orange

sticker.  (Patulak Dep. at 26:2-11.)  Aside from marking down the
price of an as-is item, price overrides are used at the checkout
register if the price of a scanned item is different from the
posted price, a competitor is offering the same item for less; or
a member purchases an item and later discovers it is on sale.
(Patulak Dep. at 26:15-22; 63:6-64:-19.) A price override can be
made by a member of management for a number of reasons aside from
the item being sold as-is. (Patulak Dep. at 63:25-64:4.)

Every Sam's Club store is required to keep track of as-is
orange-sticker items in a Claims Orange Sticker Price Override
Log ("Orange Sticker Log") which is maintained at the store level
pursuant to a company-wide policy.  (Patulak Dep. at 54:14-
57:17.)  The Orange Sticker Log records the designation of
products as as-is but does not track the sale of those items.
(Patulak Dep. at 56:8-57:12.)  Sam's Club has no method of
identifying which Members purchased as-is products. [Patulak Dep.
at 53:18-23.]

Defendant Sam's Club offers its members the option of
purchasing Service Plans through National Electronics Warranty
Corp. ("N.E.W.").  (Quinn Dep. at 11:17-19.)  The terms and
conditions of the Service Plan are the same at each Sam's Club
location.  (Quinn Dep. at 39:3-11.)  The Service Plan expressly
excludes "products sold 'as is' including but not limited to
floor models (unless covered by a full manufacturer's warranty on

3

your date of purchase) and demonstration models." (Lapinski Cert.
Ex. E "Sam's Club Service Agreements Terms and Conditions".)

N.E.W. is responsible for training Sam's Club employees on
the sale of service plans. (Lapinski Ex. E.)  In addition, Sam's
Club has instructed its employees to "Offer Every Time" when
selling Service Plans. (Quinn Dep. at 62:7-23; 63:22-25.)  In
2006, the sale of Service Plans comprised a portion of the
Defendant's profit. (Lapinski Cert. Ex. H.)

Plaintiff William Hayes is currently and has been a member
of Sam's Club for more than ten years. (Hayes Dep. at 10:14-21.)
Plaintiff purchased an as-is power washer from Defendant on
August 7, 2008. (Hayes Dep. at 12:8-11.) At the time of purchase,
the Sam's Club cashier offered Plaintiff a Service Plan, despite
the product being sold as-is.  Plaintiff purchased the Service
Plan for $5.26. (Hayes Dep. at 20:22-21:12.)  Plaintiff was never
informed by anyone that the Service Plan specifically excluded
as-is products. (Hayes Dep. at 121:11-15.)  There is no evidence
in the record that the Plaintiff was ever offered a refund for
the Service Plan or that the Plaintiff ever had the power washer
serviced pursuant to the warranty.

Similarly, on July 1, 2009, Plaintiff purchased a Vizio
television from the Defendant. (Hayes Dep. at 31:12-16.)  The
television was sold to Plaintiff as an as-is product.  (Hayes
Dep. at 35:15-22; 36:10-21.)  At the time of purchase, the Sam's

Club cashier again offered Plaintiff a Service Plan, despite the product being sold as-is. Plaintiff purchased the Service Plan for $39.85. (Hayes Dep. at 42:7-44:21.) Plaintiff was never informed by anyone that the Service Plan specifically excluded as-is products. (Hayes Dep. at 121:11-15.)

When the Plaintiff brought the television home, he noticed the remote was missing, as well as other things. (Hayes Dep. at 40:24-41:19; 52:15-53:20.) Plaintiff returned to Sam's Club and was given a remote control that did not work. (Hayes Dep. at 57:6-58:2.) Plaintiff returned again to Sam's Club and was advised by a Sam's Club employee that the Service Plan he purchased did not cover as-is products. (Hayes Dep. at 62:9- 63:16; 69:1-70:8.)

The Defendant offered a refund of the cost of the Service Plan; however, the Plaintiff declined. Instead of refunding the service plan, the Defendant then gave the Plaintiff a new remote control. (Hayes Dep. at 74:4-13.)

On January 26, 2010, the Plaintiff filed the instant Class Action Complaint against Defendant on behalf of himself and all other persons in the State of New Jersey who had purchased a Service Plan on as-is products from January 26, 2004 to the present in the State of New Jersey. (Docket Item 1.) The Complaint alleges violations of the New Jersey Consumer Fraud Act, breach of contract and unjust enrichment as a result of

Defendant's practice of selling Service Plans to cover as-is products without first informing Plaintiff or Class members that the Service Plans do not cover such products.

### B. The Instant Motion

In his motion, the Plaintiff argues that class certification is appropriate because he has satisfied all the prerequisites under Rule 23.  The Plaintiff seeks to certify his New Jersey Consumer Fraud Act Claim, breach of contract and unjust enrichment claims on behalf of the following class:

> All consumers who, from January 26, 2004 to the present, purchased from Sam's Clubs in the State of New Jersey, a Sam's Club Service Agreement to cover as-is products.

The general premise underlying Plaintiff's complaint is that the Defendant's practice of selling Service Plans to cover as-is products without first informing the Plaintiff and other class members that the Service Plans exclude as-is products is unlawful.

The Plaintiff maintains that he has satisfied all four factors under Rule 23(a) as well as the predominance and superiority requirements of Rule 23(b) to warrant class certification in this matter.  First, the Plaintiff argues that numerosity has been met because discovery has shown that Service Plans were sold to members in 3,500 price override transactions in the State of New Jersey from January 2004 to the present.

6

(Pl.'s Brief at 12.)   Plaintiff contends that this high number of transactions makes joinder difficult and impracticable. Therefore, a class action is more efficient and expedient.

Second, the Plaintiff maintains that the typicality requirement is satisfied.   The Plaintiff states that his claim arises from the same course of conduct as all other class members, namely being sold a Service Plan on an as-is product by a Sam's Club cashier at time of purchase without being informed that the Service Plan excludes as-is products from coverage. Here, Plaintiff argues that his claim and the class's claims arise out of the Defendant's uniform course of conduct and therefore, the typicality requirement is met.

Third, the Plaintiff contends that he will fairly and adequately protect the interests of the class. The Plaintiff argues that his claims are essentially identical to the class and his interests are not antagonistic to the class.   In addition, the Plaintiff maintains that his attorneys are qualified and have experience litigating class action cases.

Finally, the Plaintiff argues that he satisfies both the commonality requirement of Rule 23(a) as well as the predominance and superiority requirements of Rule 23(b)(3).   The Plaintiff maintains that common questions of law and fact predominate and contends that the elements of his New Jersey Consumer Fraud Act claim, breach of contract claim and unjust enrichment claim can

be satisfied through common proofs.  In addition, Plaintiff relies on <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591 (1997) and <u>Elias v. Unger's Food Products</u>, 252 F.R.D. 233 (D.N.J. 2008) for the proposition that predominance is readily met in cases alleging consumer fraud.

Therefore, the Plaintiff argues that his motion for class certification should be granted and that a Rule 23(b)(3) class be certified.

The Defendant opposes this motion on four main grounds. First, the Defendant contends that the Plaintiff's definition of the proposed class is overbroad and includes class members who suffered no harm.  Therefore, the Defendant argues that the Plaintiff's proposed class lacks standing to bring suit.

Second, the Defendant argues that Plaintiff's proposed class is not ascertainable because there is no way to determine which proposed class members purchased service plans for ineligible as-is items.  The Defendant states that it only knows whether a Member purchased an item subject to a price override and cannot ascertain whether the price override was because the product was sold as-is. (Patulak Dep. at 26:15-22; 53:18-23; 57:7-12; 63:6-20; 63:25-64:4.)  Consequently, the Defendant maintains that individual inquiries would be necessary to determine whether a particular member purchased a Service Plan for an as-is item. Since there is no class-wide method for determining who is or is

8

not a class member, Defendant argues that Plaintiff's motion be
denied.

Next, the Defendant disputes whether the Plaintiff has
satisfied his burden to show by a preponderance of the evidence
that the class is sufficiently numerous to warrant class
certification.  The Defendant does not dispute that Service Plans
were sold on 3,500 price override transactions.  However, the
Defendant points out that price override transactions occur for a
number of reasons and that it is uncertain whether as-is items
were sold during any of those 3,500 transactions.[1]  Defendant
maintains that a finding of numerosity in this case would be mere
speculation because the Plaintiff has failed to identify one
other class member besides himself that purchased a Service Plan
with an as-is product.

Finally, the Defendant argues that individual issues
predominate and the Plaintiff has not satisfied Rule 23(b)(3).
The Defendant argues that there are individual questions with
regard to whether a loss actually occurred.  Specifically, the
Defendant argues that there is no way to determine if the price
override was due to an as-is product, if the as-is product was

---

[1] In addition to marking down the price of an as-is item,
price overrides are used at the checkout register if the price of
a scanned item is different from the posted price, a competitor
is offering the same item for less; or a member purchases an item
and later discovers it is on sale. (Patulak Dep. at 26:15-22;
63:6-64:-19.)

covered by a full manufacturers warranty or whether the member
was denied reimbursement of the Service Plan or coverage.  These
individualized questions, the Defendant argues, prevent class
certification.

## III.  DISCUSSION

Plaintiff's claims are based on two separate Service Plans
the Plaintiff purchased for two as-is products.  The first
Service Plan was purchased in conjunction with a power washer.
There is no evidence in the record or the pleadings indicating
that the power washer was in need of service and the Plaintiff
was denied service despite his purchase of a Service Plan.  There
is also no evidence in the record that the Plaintiff was offered
a refund for his purchase price of the Service Plan on the power
washer prior to the filing of this litigation.  Rather, it is
apparent from the record that the Plaintiff paid $5.26 for a
Service Plan that expressly excluded his as-is product from
coverage.  The Court will analyze the Plaintiff's class
certification motion with reference to this first Service Plan.
The Court will address the Plaintiff's second Service Plan on his
as-is television _infra_ at Section B.

### A. Class Certification

"District courts have discretion under Rule 23 to certify a
class." Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006).
To certify a class, the Court must find that the proposed class

meets the prerequisites to a class action; "plaintiffs must

establish that all four requisites of Rule 23(a) and at least one

part of Rule 23(b) are met." In re Chiang, 385 F.3d 256, 264 (3d

Cir. 2004). As the Court of Appeals recently emphasized:

> [T]he requirements set out in Rule 23 are not mere
> pleading rules. The court may delve beyond the pleadings
> to determine whether the requirements for class
> certification are satisfied . . . .
>
> Class certification requires a finding that each of the
> requirements of Rule 23 has been met. See [Unger v.
> Amedisys Inc., 401 F.3d 316, 320 (5th Cir. 2005)] ("The
> plain text of Rule 23 requires the court to 'find,' not
> merely assume, the facts favoring class certification.").
> Factual determinations necessary to make Rule 23 findings
> must be made by a preponderance of the evidence. In
> other words, to certify a class the district court must
> find that the evidence more likely than not establishes
> each fact necessary to meet the requirements of Rule 23.

In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 316,

320 (3d Cir. 2008) (some internal quotations and citations

omitted). Thus, Plaintiff has the burden of introducing evidence

sufficient to meet a burden of proof by a preponderance of the

evidence that he has satisfied each element of Rule 23. The

District Court must be satisfied that "the evidence more likely

than not establishes each fact necessary to meet the requirements

of Rule 23." Id. at 320.

However, "it is not necessary for the plaintiffs to

establish the merits of their case at the class certification

stage, and ... in determining whether a class will be certified,

the substantive allegations of the complaint must be taken as

11

true." Chiang, 385 F.3d at 262. "Depending on the circumstances, [however,] class certification questions are sometimes 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,' and 'courts may delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" Beck, 457 F.3d at 297 (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 167 (3d Cir. 2001)).

However, "a district court has limited authority to examine the merits when conducting a certification inquiry" and the "ability of the named plaintiff to succeed on his or her individual claims" is not a prerequisite to class certification. Sullivan v. DB Investments, Inc., 667 F.3d 273, 2011 U.S. App. LEXIS 25185 at *68 (3d Cir. Dec. 20, 2011). "Put another way, a district court may inquire into the merits of the claims presented in order to determine whether the requirements of Rule 23 are met, but not in order to determine whether the individual elements of each claim are satisfied." Id.

### 1.    Ascertainability and Standing

Prior to determining whether the requirements of Rule 23 have been met, the Court must first analyze whether the Plaintiffs' proposed class definition is "readily ascertainable based on objective criteria." Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 478 (D.N.J. 2009).

12

> "While class definitions obviously are tailored to the
> specifics of every case, important elements of defining
> a class include: (1) specifying a particular group that
> was harmed during a particular time frame, in a
> particular location, in a particular way; and (2)
> facilitating a court's ability to ascertain its
> membership in some objective manner." <u>Bentley v.
> Honeywell Int'l Inc.</u>, 223 F.R.D. 471, (S.D. Ohio 2004)
> (citing <u>Crosby</u>, 796 F.2d at 580). Although "Plaintiffs
> need not prove that class members have been injured for
> purposes of defining the [classes], Plaintiffs' class
> definitions must have some relation to the Defendant['s]
> activities." <u>O'Connor v. Boeing North American, Inc.</u>,
> 184 F.R.D. 311, 320 (C.D. Cal. 1998).

<u>Rowe v. E.I. Dupont Demours & Co.</u>, 262 F.R.D. 451, 455 (D.N.J.

2009).

In this case, the Defendant argues that the Plaintiff's

proposed class is not ascertainable because it includes class

members who suffered no harm. This argument ignores clear case

law which states that "plaintiffs need not prove that class

members have been injured for purposes of defining the class."

<u>Rowe</u>, 262 F.R.D. at 455. Rather, the Court must engage in a two

part analysis. First, the Court must determine whether the

defined class specifies "a particular group that was harmed

during a particular time frame, in a particular location, in a

particular way." <u>Id.</u>  Second, the Court must be able to ascertain

the class's membership in some objective manner.  <u>Id.</u>

Here, the Plaintiff has proposed the following definition of

the class:

> All consumers who, from January 26, 2004 to the present,
> purchased from Sam's Clubs in the State of New Jersey, a
> Sam's Club Service Agreement to cover as-is products.

A-20

This definition identifies a particular group: consumers who purchased a Service Agreement to cover as-is products from Sam's Clubs in the State of New Jersey.  The definition specifies a particular time frame and location: from 2004 to the present in the State of New Jersey.  This definition enumerates a particular way that the Defendant's conduct purportedly caused the class members harm: being sold Service Plans on as-is products when as-is products were excluded under the Service Plan.

The Defendant argues that the Court will not be able to ascertain the class's membership in an objective manner.  The Defendant maintains that Plaintiff's proposed class includes Members who purchased as-is items covered by a full manufacturer's warranty and thus are entitled to coverage under the Service Plan.  The Defendant also alleges that N.E.W. has agreed to honor Service Plans sold on as-is items despite the language of the agreement.  Defendant argues that Plaintiff's proposed class also includes members who were reimbursed the cost of their Service Plans.  As a result, Defendant argues that the Plaintiff's proposed class definition is overly broad and membership in the class is unable to be ascertained in an objective manner.

The Defendant's arguments regarding the second prong of this analysis are more persuasive; however, these arguments do not

affect whether the class is readily ascertainable.  The

Defendant's concerns address whether members of the class

suffered actual damages, which is a more appropriate

consideration for the numerosity requirement, not

ascertainability.  Specifically:

> the question of whether an individual suffered actual
> damages does not in any way affect the ascertainability
> of the class. A class must not be amorphous or imprecise
> in order to pass the ascertainability requirement. *See*
> *Moore's Federal Practice § 23.21[1]*. Uncertainties about
> the existence or number of individuals who have suffered
> actual damages do not render a class description
> amorphous or imprecise. Rather, such uncertainties could
> only affect the numerosity requirement for class
> certification.

Keller v. Macon County Greyhound Park, Inc., No. 07-1098, 2011

U.S. Dist. LEXIS 31777, *10 (M.D. Ala. March 24, 2011).

In addition, a Court has broad discretion to modify the

definition of a proposed class in order to render the class

readily ascertainable.  Powers v. Hamilton County Public

Defendant Comm'n, 501 F.3d 592, 619 (6th Cir. 2007) and see Henry

v. St. Croix Alumina, LLC, No. 1999-0036, 2008 U.S. Dist. LEXIS

43755, *34 (D.V.I. June 3, 2008).  At oral argument, the

Plaintiff proposed the following amended definition:

> **All consumers who, from January 26, 2004 to the present,**
> **purchased from Sam's Clubs in the State of New Jersey, a**
> **Sam's Club Service Plan to cover as-is products.**
> **Excluded from the Class are consumers whose as-is product**
> **was covered by a full manufacturer's warranty, was a**
> **last-one item, consumers who obtained service on their**
> **product, and consumers who have previously been**
> **reimbursed for the cost of the Service Plan.**

15

A-22

This amended proposed definition is a distinct improvement as it enables the court to ascertain class membership in an objective manner and renders the class readily ascertainable, while excluding from the class those who have not suffered comparable harm.  The Court will now address the requirements of Rule 23(a) and Rule 23(b).

### 2.  Rule 23(a)

Rule 23(a), Fed. R. Civ. P., provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Where, as here, "an action is to proceed under Rule 23(b)(3), the commonality requirement [of Rule 23(a)] is subsumed by [Rule 23(b)(3)'s] predominance requirement." Danvers Motor Co., Inc. v. Ford Motor Co., 543 F.3d 141, 148 (3d Cir. 2008) (internal quotations and citations omitted).  This Rule 23(a) discussion accordingly accounts for the numerosity, typicality, and adequacy factors, leaving the consideration of commonality for the discussion of Rule 23(b)(3) predominance, infra.  See id.

#### a. Numerosity

Rule 23(a)(1) provides that class certification should not

be granted unless the potential membership of the proposed class
is "so numerous that joinder of all members is impracticable."
Specifically, "impracticability refers to the degree of
difficulty or inconvenience involved in joining all members of
the proposed class in accordance with Rule 19." Cannon v. Cherry
Hill Toyota, Inc., 184 F.R.D. 540, 543 (D.N.J. 1998).  When
determining whether numerosity is satisfied, a court should
consider the estimated number of parties in the proposed class,
the expediency of joinder, and the practicality of multiple
lawsuits." Id.  See also Dewey v. Volkswagen of Am., 728 F. Supp.
2d 546, 566 (D.N.J. 2010).

In addition, the "plaintiff need not precisely enumerate the
potential size of the proposed class, nor is the plaintiff
required to demonstrate that joinder would be impossible."
Cannon, 184 F.R.D. at 543.  As the Court of Appeals has
explained, "[n]o minimum number of plaintiffs is required to
maintain a suit as a class action, but generally if the named
plaintiff demonstrates that the potential number of plaintiffs
exceeds 40, the first prong of Rule 23(a) has been met." Stewart
v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

In this case, the potential class is as large as 3,500
members, which represents the number of price override
transactions from 2004 to the present in the State of New Jersey
where a Service Plan was also purchased.  It is unclear how many

17

A-24

of these these override transactions involved as-is items that were excluded from coverage under the Service Plan.  This is due to the Defendant's inability to determine whether the price overrides in these transactions involved the purchase of an as-is product.  Consequently, Sam's Club does not track which members purchased as-is items and only tracks whether a member purchased an item subject to a price override. [Patulak Decl. ¶¶ 13, 14.]

The Plaintiff's evidence that 3,500 Service Plans were purchased in conjunction with a price override transaction is sufficient to infer numerosity at this stage of the litigation.  If even five percent of the overrides involved as-is purchases with a Sam's Club Service Plan, there would be 175 such purchasers, easily satisfying the numerosity requirement for present purposes.  The Plaintiff should not be forestalled from class certification due to the Defendant's imprecise record keeping.  If, after the Plaintiff has had an opportunity to notify class members and it becomes apparent that there are insufficient members to satisfy the numerosity requirement, then the Defendant may file a motion for de-certification at that time.

Therefore, the Plaintiff has sustained his burden of proof to establish numerosity for class certification purposes.

### b. Typicality

The typicality prong is satisfied here.  To address the

18

question of typicality, the Court assesses:

> whether the named plaintiffs' claims are typical, in
> common-sense terms, of the class, thus suggesting that
> the incentives of the plaintiffs are aligned with those
> of the class.  Factual differences will not render a
> claim atypical if the claim arises from the same event or
> practice or course of conduct that gives rise to the
> claims of the class members, and if it is based on the
> same legal theory.

Beck, 457 F.3d at 295-96 (internal quotations and citations

omitted).  Put differently, "[t]ypicality entails an inquiry

whether the named [plaintiffs'] individual circumstances are

markedly different or the legal theory upon which the claims are

based differs from that upon which the claims of other class

members will perforce be based."  Hassine v. Jeffes, 846 F.2d

169, 177 (3d Cir. 1988) (internal quotations and citations

omitted).

     The named Plaintiff's claims in this case "arise[] from the

same . . . practice or course of conduct that gives rise to the

claims of the class members," and are based on the same legal

theory.  Beck, 457 F.3d at 295-96 (internal quotations and

citations omitted).  The Plaintiff has alleged that he, like the

absent class members, was sold a Service Plan from the Defendant

to cover an as-is product without being informed that the Service

Plan excludes as-is products.  The Plaintiff has thus alleged

that he "suffered harm as the result of the same company-wide

conduct that injured the absentee class members," meaning that

the typicality criterion is satisfied here.  In re Prudential

Ins. Co. of America Sales Practice Litigation Agent Actions, 148
F.3d 283, 312 (3d Cir. 1998).

### c. Fairness and Adequacy

The final Rule 23(a) consideration is whether "the
representative parties will fairly and adequately protect the
interests of the class." Fed. R. Civ. P. 23(a)(4). With regard
to Rule 23(a)'s adequacy prong, the Court of Appeals has
explained that the Court's task is to address whether "the
putative named plaintiff has the ability and the incentive to
represent the claims of the class vigorously, that he or she has
obtained adequate counsel, and that there is no conflict between
the individual's claims and those asserted on behalf of the
class." Hassine, 846 F.2d at 179. "Adequate representation
depends on two factors: (a) the plaintiff's attorney must be
qualified, experienced, and generally able to conduct the
proposed litigation, and (b) the plaintiff must not have
interests antagonistic to those of the class." Wetzel v. Liberty
Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975).

Both of these factors are present here. Plaintiff's
attorney has substantial experience with class actions, and has
litigated this matter zealously. In addition, the Plaintiff and
the class members purportedly suffered harm from the same alleged
course of conduct: the Defendant selling Service Plans on as-is
products without informing the purchaser that as-is products were

excluded from coverage under the Service Plan.  Accordingly,
Plaintiff's interests are not antagonistic to those of the class.
Therefore, the fairness and adequacy requirement is satisfied in
this case.

### 3.    Rule 23(b)(3)

In addition to the requirements of Rule 23(a), the Plaintiff
must also satisfy one of the alternative requirements of Rule
23(b) to certify the proposed class.  The Plaintiff argues that
Rule 23(b)(3) is satisfied and maintains that common questions of
law or fact predominate and that the class action is superior to
other methods for adjudicating the case.

Rule 23(b)(3) provides that a class action may be maintained
only if:

> the court finds that the questions of law or fact common
> to class members predominate over any questions affecting
> only individual members, and that a class action is
> superior to other available methods for fairly and
> efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).  "The twin requirements of Rule 23(b)
are known as predominance and superiority." In re Hydrogen
Peroxide, 552 F.3d at 310.  Both requirements will be addressed
separately below.

### a. Predominance

The Court of Appeals recently reviewed Rule 23(b)(3)'s
predominance requirement, explaining that

> [p]redominance "tests whether proposed classes are
> sufficiently cohesive to warrant adjudication by

representation," Amchem, 521 U.S. at 623, a standard "far more demanding" than the commonality requirement of Rule 23(a), id. at 623-24, requiring more than a common claim. Issues common to the class must predominate over individual issues. Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case. If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.

In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d at 310-11 (some internal quotations, citations, and footnotes omitted, emphasis added). Therefore, it is necessary to examine each claim the Plaintiff seeks to certify and determine whether the essential elements of the claim can be satisfied through common proofs.

However, the Court must take note of the recent Third Circuit decision, Sullivan v. DB Investments, Inc., 667 F.3d 273, 2011 U.S. App. LEXIS 25185 (3d Cir. Dec. 20, 2011). In Sullivan, the Third Circuit discussed the certification of a class for settlement purposes and specifically addressed the differences between Rule 23 class certification and a Rule 12(b)(6) analysis with regard to addressing the merits of the underlying causes of action. The Third Circuit reasoned that "a district court has limited authority to examine the merits when conducting a certification inquiry" and emphasized that the "ability of the named plaintiff to succeed on his or her individual claims has

22

never been a prerequisite to certification of the class." <u>Id.</u> at *68.

The Court will follow the reasoning of the <u>Sullivan</u> decision in analyzing the instant motion for class certification.  It is not required for a plaintiff to prove the merits his claims on a motion for certification.  The Court will only look to whether the Plaintiff's claims can be satisfied through common proof and will refrain from treating the instant analysis as akin to a 12(b)(6) motion.

### 1. New Jersey Consumer Fraud Act

In order to prevail on a claim under the New Jersey Consumer Fraud Act ("NJCFA"), a plaintiff must satisfy three elements. The Plaintiff must demonstrate (1) unlawful conduct on the part of the Defendant; (2) an ascertainable loss on the part of the Plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.  N.J.S.A. § 56:8-19; <u>Bosland v. Warnock Dodge, Inc.</u>, 197 N.J. 543, 557 (2009).

In this case, all three elements of NJCFA can be satisfied through common proofs since the harm alleged arose from the same company-wide conduct, namely the Defendant's sale of Service Plans on as-is products.  The Plaintiff and fellow class members suffered an ascertainable loss when they were sold a product, the Service Plan, that had no value because the product purportedly covered under the warranty was expressly excluded.  The Plaintiff

23

and absent class members paid money for a product with no value
and received no consideration from the Defendant.

Therefore, common proofs can be used to establish that these
customers paid for a Service Plan and received nothing in return
in violation of the NJCFA.

### 2. Breach of Contract

Similar to the analysis of the NJCFA, the Plaintiff's motion
for certification of his breach of contract claim should be
granted because these elements can be satisfied through common
proofs.

In New Jersey, a breach of contract claim requires a
plaintiff to satisfy three elements: (1) the existence of a valid
contract; (2) the defendant's breach of the contract; (3)
resulting damages. <u>AT&T Credit Corp. v. Zurich Data Corp.</u>, 37 F.
Supp. 2d 367, 370 (D.N.J. 1999).

In this case, the existence of a valid contract and breach
can be satisfied through common proofs since the Terms and
Conditions of the Service Plans are the same for all Service
Plans sold at Sam's Club stores.  In addition, damages are
subject to common proof because the Plaintiff and class members
were sold Service Plans that expressly excluded their as-is
products.  The calculation of damages for each class member would
presumably equal the amount each member paid for the Service
Plan, which is data the Defendant maintains and has readily

24

accessible for all class members.

Therefore, common proofs can be used to establish a claim against the Defendant for breach of contract.

### 3. Unjust Enrichment

Similar to the analysis of the NJCFA claim and breach of contract claim, the Plaintiff's motion for certification of his unjust enrichment claim can be satisfied through common proofs.

Under New Jersey law, there are two basic elements of unjust enrichment. "A plaintiff must demonstrate both that defendant received a benefit and that retention of that benefit without payment would be unjust." MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 733 (D.N.J. 2008).

In this case, the first element requiring the plaintiff to demonstrate the receipt of a benefit by the defendant is met through common proofs. The Defendant received a benefit through the sale of Service Plans to the Plaintiff and other purported class members. The second element is also met through common proofs because the Defendant's conduct in selling the Service Plans to customers without first informing customers that the Service Plan excludes as-is coverage is common to all members.

Therefore, the Plaintiff should be granted class certification on the unjust enrichment claim since the Plaintiff can establish through common proofs that it would be unjust for the Defendant to retain the purchase price of the Service Plans

A-32

on as-is products.

### b. Superiority

The second requirement of Rule 23(b)(3), the superiority requirement, requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." Georgine v. Amchem Prods., 83 F.3d 610, 632 (3d Cir. 1996). Rule 23(b)(3) enumerates the following four factors for the Court to consider in addressing the superiority requirement:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]
> (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(3).

In analyzing these factors, a class action would be an efficient means of adjudicating the Plaintiffs' claims. The interests of members of the class in individually controlling the prosecution or defense of separate actions appears to be minimal and no other litigation has been commenced by or against members of the class. It would be desirable to concentrate this litigation in one forum considering all the class members' claims arise out of the same uniform course of conduct allegedly engaged

26

in by the Defendant.

In addition, the loss suffered by class members will most likely be small as the cost of the Service Plan is minimal. These small individual stakes, typical of retail consumer classes, make class action a superior method of handling the Plaintiff's claims. Specifically:

> the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

Amchem Prods. v. Windsor, 521 U.S. 591, 617 (1997).

Therefore, the Plaintiff's claim satisfies the second prong of the Rule 23(b)(3) analysis as it is the superior method for handling Plaintiff's claims.

### 4. Conclusion

The Plaintiff's claims arising out of the sale of a Service Plan for his as-is power washer are proper for class certification. The Plaintiff has satisfied the requirements of Rule 23(a) and Rule 23(b). Therefore, Plaintiff's motion for class certification will be granted as to these claims.

### B. Mootness

However, the Plaintiff purchased a second Service Plan with his as-is television, and did have his television successfully serviced for a missing part. Therefore, the court must examine

27

whether the Plaintiff's claim with regard to the second Service Plan is a proper basis for class certification.

First, with regard to the second Service Plan, the Plaintiff does not fit the class definition in order to be considered a member of the class. The revised class definition requires that a Service Plan was purchased for an as-is product and the member did not receive service on the product. In this instance, the Plaintiff did receive service on his television and received a replacement part which was missing from the product. Therefore, the Plaintiff is not a member of the class with regard to his purchase of a Service Plan on his as-is television because he received full performance under the service agreement.

In addition, because the Plaintiff received service on his as-is television, his claims as to the purchase of the second Service Plan are moot. Article III requires a plaintiff to present a live case or controversy. Specifically, under Article III:

> [A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. To establish the existence of such a "live" issue, there must be "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

International Brotherhood of Boilermakers, etc. v. Kelly, 815 F.2d 912, 915 (3d Cir. 1987)(citations omitted). Importantly, "the central question of all mootness problems is whether changes

in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." Id. (citing Jersey Central Power and Light Co. v. State of New Jersey, 772 F.2d 35, 39 (3d Cir. 1985)).

There are only two limited exceptions to this rule.  A named plaintiff whose individual claim is moot may continue in his representative capacity:

> (1) to argue a certification motion that was filed before his claims expired and which the district court did not have a reasonable opportunity to decide; and (2) to appeal a denial of a class certification motion presented when his claims were live.

Lusardi, 975 F.2d at 975.  Absent these two exceptions, the adequacy requirement is not met when a named plaintiff does not have a live individual claim and therefore the named plaintiff's motion for class certification should be denied as to a moot claim. "[T]he named plaintiff has the requisite personal stake in class certification only if . . . he has a live individual claim when the district court decides the class certification issue, or, at the very least, he had a live claim when he filed for class certification." Id. at 977.

In this case, with regard to the television purchase, the two exceptions noted above do not apply because serious questions with regard to the justiciability of Plaintiff's claims based on his as-is television Service Plan existed at the time his case was filed and prior to his filing of the instant motion for class

certification.   The second Service Agreement was purchased in conjunction with an as-is television.   The television was missing a remote.   The Plaintiff went to Sam's Club and sought to enforce the Service Agreement.   Despite the exclusion of as-is products from the Service Agreement, the Defendant offered the Plaintiff a refund of the Service Agreement or alternatively offered to honor the Service Agreement by providing the Plaintiff with a replacement remote.   The Plaintiff chose to receive a replacement remote which was given to him by the Defendant.   Therefore, the Service Agreement was honored despite the as-is exclusion and the Plaintiff was made whole.

Since the Plaintiff had already been made whole with regard to the second Service Agreement long before filing his complaint herein, this dispute between the parties as to the Service Plan on the television is moot.   The court is forestalled from offering any meaningful relief to the parties since the Service Plan has been honored despite the as-is exclusion.[2]   Accordingly, this aspect of Plaintiff's case is moot and not a proper basis for class certification.

---

[2] Although this second Service Plan transaction does not give rise to a justiciable dispute, the fact that Defendant, on a second occasion, offered a Service Plan for this as-is product is relevant toward suggesting that Plaintiff's first Service Plan transaction (on the as-is power washer) was not an isolated event.

30

IV.   CONCLUSION

The Plaintiff's claims arising out of the first Service Plan sold on the as-is power washer are sufficient to serve as a basis for Plaintiff's motion for class action certification.  The Plaintiff meets all the requirements of Rule 23(a) and Rule 23(b) and therefore, Plaintiff's motion for class certification will be granted with regard to the claims arising out of the sale of the first Service Plan.

However, Plaintiff's motion for class certification is denied as moot with regard to the claims arising out of the Plaintiff's second Service Plan for the as-is television. Plaintiff himself does not fit within the revised class definition because the Plaintiff's claims arising out of the second Service Plan are moot as Defendant honored the Service Agreement and the Plaintiff was made whole.

Therefore, the Plaintiff's motion for class certification is granted. The Plaintiff's claims arising out of the second Service Plan are dismissed as moot.

The accompanying Order will be entered.


**March 12, 2012**          **s/ Jerome B. Simandle**
Date                        JEROME B. SIMANDLE
                            Chief U.S. District Judge